LAURA E. SIMPSON vs. WILLIAM E. BRIGHT & others.

EDWIN A. SIMPSON vs. SAME.

WILLIAM E. BRIGHT & others vs. EDWIN A. SIMPSON
& others.

Middlesex.    March 9, 10, 1926. — October 22, 1926.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & WAIT, JJ.

*Stockbroker. Wagering Contract. Contract*, Validity. *Equity Jurisdiction*, Accounting.

In the last sentence of § 4 of G. L. c. 137, the words, "a purchase or sale of the securities or commodities . . . made by the person so employed on a stock exchange or board of trade," mean a purchase or sale effected through the broker individually or through an agent of that broker, and apply to all kinds of purchases and sales of securities or commodities.

In an action at law begun in February, 1921, by a married woman against a stockbroker, the declaration was upon an account annexed containing items, amounting to $30,000, of payments to the defendant on or before April 11, 1919, and items, amounting to $64,730, of payments between December 31, 1919, and January 14, 1921. An auditor who heard the action found in substance that the payments alleged were made by the plaintiff's husband in her behalf in transactions relating to the purchase and sale of securities; that neither she nor her husband ever possessed or received or delivered a certificate for any of the securities involved in the transactions; that she and her husband intended that there should be no actual purchase or sale in such transactions; and that the defendant had reasonable cause to believe that such intention existed. The auditor further found in substance that the defendant executed the orders of the plaintiff on the Boston stock exchange and, through his correspondent, on the New York stock exchange in accordance with the rules and practices of those exchanges, which required a balancing through a stock exchange clearing house of purchases and sales by the various brokers each day and a delivery of the balance of securities found due on the next regular clearing house day, which usually was the day following the transactions, excepting when the transactions were on Friday or Saturday, when the rules required delivery on the following Monday. The auditor found for the plaintiff. The action was heard by a judge without a jury upon the auditor's report and oral evidence which did not controvert the foregoing findings by the auditor. The judge found: "The facts found by the auditor which were uncontroverted establish that the defendants actually executed the orders of the plaintiff by making actual purchases or sales of the securities ordered bought or sold, in accordance with the practice

of the stock exchange." Subject to exceptions by the defendant, the judge ruled that he must follow the findings by the auditor and found for the plaintiff. *Held,* that

(1) The sentence added to the wagering contracts act by St. 1919, c. 247, § 1, approved June 20, 1919, and now appearing in G. L. c. 137, § 4, was controlling;

(2) As a matter of law it appeared that the defendant had complied with the requirements of that statutory provision.

(3) Judgment was ordered for the defendant.

A married woman in 1921 brought an action at law against a stockbroker seeking to recover under G. L. c. 137, § 4, payments made in transactions with the defendant carried on wholly by her husband in her behalf. Over two months later, the husband brought an action against the stockbroker to recover at common law a balance alleged to be due to him personally on other transactions. The answer of the stockbroker in the action by the husband was merely a general denial. Over five months later, the stockbroker brought a bill in equity against the married woman, her husband, and a third person, in which he alleged that the accounts of the married woman and of her husband in reality were the husband's and that the husband in writing had signed guaranties protecting the stockbroker against loss by reason of the accounts of the married woman and of the third person; admitted that a sum was due the husband on his account with the stockbroker as alleged in the action by the husband against the stockbroker; further alleged that sums were due the stockbroker on the accounts of the married woman and of the third person which should be set off against such liability; and prayed that the actions at law be enjoined and that the rights of all parties, both plaintiffs and defendants, be determined and a decree be entered "showing the amounts, if any, due from plaintiffs to defendants or any of them, and the amounts due from defendants or any of them to plaintiffs." The cases were heard to-· gether but were not consolidated. In the action at law by the married woman, the facts found showed that the stockbroker had satisfied the requirements of the last sentence of G. L. c. 137, § 4. A judge of the Superior Court found therein for the plaintiff. In the action by the husband, it was found that the transactions in which the stockbroker engaged for the plaintiff were wagering contracts or bets but that there was no illegal contract between the plaintiff and the stockbroker and that the plaintiff might recover the avails of the transactions in the hands of the stockbroker. In the suit in equity, the same facts as to the method of dealings of the stockbroker with the husband, with the married woman and with the third person appeared as in the respective actions at law, and, further, in substance, that, if the transactions of the stockbroker with the married woman and the third person were legal, a balance was due the stockbroker from each of them, the payment of which was guaranteed by the husband. This court ordered:

(1) The stockbroker having satisfied the requirements of the last sentence of § 4 of G. L. c. 137, exceptions by him in the action by the married woman must be sustained and judgment ordered in his favor;

(2) Exceptions by the stockbroker in the action by the husband must be overruled;

(3) An accounting should be had in the suit in equity to determine what amount was due the husband, after deducting from the amount admittedly due him according to the allegations of the stockbroker's bill in equity and the findings in the action at law by the husband, such sums as were due the stockbroker by reason of the fact that the husband guaranteed the stockbroker against loss on the accounts of the married woman and of the third person.

CONTRACT by Laura E. Simpson against copartners doing business under the name of Bright, Sears and Company. An account annexed to the declaration contained items showing payments to the defendants amounting to $30,000 on July 5, 1918, April 1 and April 11, 1919, and payments amounting to $64,730.80 on various dates beginning December 31, 1919, and ending January 14, 1921. Writ dated February 25, 1921. Also, an action of

CONTRACT at common law by Edwin A. Simpson against the same firm upon an account annexed for $37,242.70. Writ dated May 6, 1921. Also, a

BILL IN EQUITY, filed in the Superior Court on October 21, 1921, by the same firm of stockbrokers against the plaintiff in the second action, the plaintiff in the first action, and one Bertha L. Currie, in which the plaintiffs in substance alleged that accounts standing in the name of Edwin A. Simpson on June 30, 1921, showed balances in his favor amounting to $30,400.77, plus Liberty bonds of the par value of $7,150; that on the same date the account with the firm standing in the name of Laura E. Simpson showed a balance due the firm of $49,085.66 less the value of certain "securities in the plaintiffs' hands"; that on the same date in the account with the firm standing in the name of Bertha L. Currie there was a balance in favor of the firm of $892.54; that the account standing in the name of Edwin A. Simpson and of Laura E. Simpson "constitute one single, indivisible and entire account belonging to said Edwin A. Simpson, and that it is inequitable and unjust that said Edwin A. Simpson be permitted to maintain two separate actions at law on the same account. In bringing the two said actions at law on the same account the said Edwin A. Simpson is proceeding on two different and inconsistent theories. In the action brought in the name of Laura E. Simpson said Edwin A.

Simpson is proceeding on the theory that the transactions on said account are not binding upon him and he is seeking to recover back deposits made by him to the credit of the said Laura E. Simpson account under the provisions of G. L. c. 137, § 4, because the said account in the name of Laura E. Simpson shows a loss and a balance due to plaintiffs. . . . Plaintiffs are entitled to treat these accounts as one single, indivisible and entire account, and if so treated there will be a balance due defendant, Edwin A. Simpson, from plaintiffs amounting to between $5,000 and $6,000 (depending on the market value of the securities) and this amount plaintiffs are ready and willing to pay to said Edwin A. Simpson"; and that Edwin A. Simpson was liable to the plaintiffs by reason of guaranties in writing by him of the accounts of Laura E. Simpson and of Bertha L. Currie. The prayers of the bill were that the rights of all parties, both plaintiffs and defendants, be considered and determined and that a decree be entered "showing the amounts, if any, due from plaintiffs to defendants or any of them, and the amounts due from defendants or any of them to plaintiffs"; and that the actions at law of Edwin A. Simpson and Laura E. Simpson be enjoined.

The answer of the defendants in the first action at law included a general denial and allegations of payment and that the defendants "made in accordance with the terms of the contract or employment, personally or by agent, an actual purchase or sale of said securities or a valid contract therefor." The answer of the defendants in the second action contained merely a general denial. Separate answers were filed by each of the defendants in the suit in equity.

The actions at law then were referred to the same auditor and the suit in equity to the same person as master. The rules of reference directed that the auditor and master hear the three cases together. The record discloses no order for the consolidation of the three cases. The auditor-master filed separate reports in the three cases.

Findings by the auditor-master which are common to his reports in all the cases are stated in the opinion.

In the action by Laura E. Simpson against the stock-

brokers, the auditor in substance found that all transactions for the account of the plaintiff with the defendants were carried on in her behalf by her husband, Edwin A. Simpson, but that she was a party to them; that acting through her agent Edwin A. Simpson she contracted upon credit or upon margin to buy and to sell shares of stock in different corporations; that in every instance at the time such contract was made, both she and Edwin A. Simpson intended that there should be no actual purchase or sale; that Edwin A. Simpson, the defendant's manager and the defendants had reasonable cause to believe that Laura E. Simpson at the said times intended that there should be no actual purchase or sale; and that no certificate for any shares listed in this account was ever in the possession of the plaintiff or of Edwin A. Simpson, and no certificate for any such shares was ever delivered by the defendants to the plaintiff or to Edwin A. Simpson. He therefore ruled "(1) — that 'actual purchase or sale' as the words are used in the statute means a present transaction and not a contract to buy or sell for future delivery; (2) — that the defendants must have had at all times within their own possession and control sufficient certificates of the particular stock bought on the plaintiff's order to deliver to her upon payment the number of shares ordered by her, and also enough shares to deliver to every other customer in that same stock a certificate for the shares bought by that customer." He further found that there was "no evidence to justify a finding that the defendants had within their own possession and control sufficient certificates to satisfy the requirements of the rule (2) stated above, and I make no finding that the defendants did have sufficient certificates to meet the requirements of the rule. I find that Laura E. Simpson did not own any of the securities at the time of the contract of sale or of giving the order to sell. I rule, if material, that this fact is *prima facie* evidence that within the meaning of the statute there was an intention that there should be no actual purchase or sale and that there was reasonable cause to believe that said intention existed"; and he found for the plaintiff.

In the Superior Court, the action of Laura E. Simpson was

heard by *Brown*, J., without a jury, upon the auditor's report and oral evidence and under the agreement stated in the opinion. The judge found and ruled as follows: "The facts found by the auditor which were uncontroverted establish that the defendants actually executed the orders of the plaintiff by making actual purchases or sales of the securities ordered bought or sold, in accordance with the practice of the stock exchange."

At the request of the plaintiff, subject to exceptions by the defendants, the judge in the Laura E. Simpson action gave, among others, the following rulings:

"5. It is not sufficient for the defendants, when relying upon the defence allowed by the last sentence of § 4 of G. L. c. 137, to show that the purchases or sales of the securities or commodities ordered by the plaintiff to be bought or sold were made by the defendants so employed on the stock exchange or board of trade, and that other purchases or sales of such securities or commodities were made on the same day on such exchange or board of trade by the defendants or their agents in the due course of business unless the defendants also show that the balance of such purchases or sales of securities or commodities were received or delivered by them, the defendants, by direction of the clearing house of such exchange or board within the time thereafter specified by the statute.

"6. As a matter of law there is no evidence in this case upon which a finding of fact could be made, that the balance of purchases or sales of these securities or the commodities ordered by the plaintiff to be bought or sold were received or delivered by the defendants by direction of any clearing house, or exchange or board of trade within the time specified in the last sentence of G. L. c. 137, § 4.

"7. As a matter of law there is no evidence to justify a finding that the defendants had within their own possession or control sufficient certificates to satisfy the requirements of rule 2 stated in the auditor's report.

"8. As a matter of law there is no evidence to justify a finding that the defendants had sufficient certificates to satisfy the requirements of rule 2 stated in the auditor's report.

"9.   There is nothing inconsistent between the finding of the auditor that 'under the practice of such exchange deliveries are to be made on the next regular clearing day' after the execution of orders and the finding of the auditor that the defendants did not comply with rule 2 stated in the auditor's report.

"10.   There is no evidence before the court upon which findings of fact different from those made by the auditor could now be made.

"11.   There is no evidence in this case to contradict or control a general finding of the auditor in favor of the plaintiff.

"12.   The findings of fact made by the auditor, as a matter of law, must be adopted and approved by this court."

The judge found for the plaintiff Laura E. Simpson in the sum of $109,687.25.   The defendants alleged exceptions.

In his report in the action by Edwin A. Simpson, the auditor made no reference to the provisions of G. L. c. 137 and no ruling as to their bearing upon the issues in that action.   He found in substance that the plaintiff, in his transactions with and through the defendants, had no intention to receive any certificate for stock bought or to deliver any certificate for stock sold, that he never had in his own possession any certificate for any of the stocks with respect to which the transactions reported in either of these two accounts relate, and that the plaintiff testified: "I never had any intention of taking the stock.   It was the ups and downs that I was looking at.   I never had any idea of taking any stock out.   I was playing on the board.   If it went up I was to win; if it went down I was to lose.   That was the idea.   I was going wholly on the board. . . . I am sorry to say I am afraid it is gambling."   The auditor further found that every purchase and every sale of stock by Edwin A. Simpson for either of his two accounts was a wagering transaction and ruled "that every contract made by the plaintiff for the purchase or sale of stocks on either of the plaintiff's [Edwin's] two accounts is illegal and void at common law so far as the plaintiff is concerned."   He further found and ruled as follows:

"I find, if it is a question of fact and material, and rule, if it is a question of law and material, that each transaction which the plaintiff authorized was a wagering contract or bet, so far as he was concerned with some person whose identity was not known to him.

"I find, if material, that the parties to any particular bet were not known to each other and that the transaction between them was made through the agency of the respective brokers in the manner above outlined.

"I find, if it is a question of fact, and rule, if it is a question of law, that it is not material to determine in this case whether the said other person, whose identity was not known either to the plaintiff or to his brokers, was making wagers or bets with the plaintiff. The proceeds of the transactions have come into the hands of the defendants as agents of the plaintiff and I rule that he is entitled to recover said proceeds.

"I find that the defendants made no bet or wagering contract with the plaintiff and were only his agents to execute his orders.

"I find that taking the transactions together the plaintiff won more money than he lost, and that the result was to bring into the hands of the defendants as his agents a sum of money in addition to certain bonds, as already stated.

"This action is at common law." He found for the plaintiff.

The action of Edwin A. Simpson under the agreement stated in the opinion also was heard by *Brown*, J., without a jury. The record discloses no further evidence than the auditor's report. The judge, subject to exceptions by the defendant, refused to rule "that on the facts found by the auditor the plaintiff is not entitled to recover," and found for the plaintiff in the sum of $45,922.87.

In his report in the suit in equity, the master in substance reinforced the findings and rulings made by him as auditor as to the respective claims of Laura E. Simpson and Edwin A. Simpson in their actions at law. He further found that the liability of Edwin A. Simpson to the stockbrokers, if any, rested with respect to the account of Bertha L. Currie upon

the following letter addressed to the stockbrokers by Edwin A. Simpson: "I hereby agree to guarantee you against loss on account standing on your books in name of Mrs. B. L. Currie. You are authorized to figure any margin on my account, also on account in name of Mrs. Laura Simpson to protect the account of B. L. Currie, and in case both are not sufficient, I agree to protect you against any loss." The master further found that Bertha L. Currie employed the stockbrokers to buy and sell securities for her account upon credit or upon margin, that she intended at the time that there should be no actual purchase or sale, and that the stockbrokers, being so employed, had reasonable cause to believe that Bertha L. Currie's intention was that there should be no actual purchase or sale; and ruled "that upon the facts in this case Bertha L. Currie might have recovered from the plaintiffs payments made by her" in the sum of $1,500 under G. L. c. 137, §§ 4, 6. He further found that, if the stockbrokers should be sustained in their contention that two accounts standing on their books in the names of Edwin A. Simpson and those standing in the names of Laura E. Simpson and of Bertha L. Currie should be consolidated and that the plaintiffs might account solely to Edwin A. Simpson for the balance due from them to him after such consolidation, the consolidated account would show $30,-400.77 due Edwin A. Simpson from the stockbrokers and $49,978.20 due the stockbrokers from Laura E. Simpson and Bertha L. Currie; but that there were securities in the possession of the stockbrokers, and, when adjustments by reason of them were made, the net amount due from the stockbrokers to Edwin A. Simpson as at June 30, 1921, would be "between $5,000 and $6,000" as alleged in the bill in equity.

The master further found that if, on the other hand, the findings and rulings in his reports as auditor in the two actions at law were sustained and his finding that Bertha L. Currie was entitled to maintain an action under G. L. c. 137, §§ 4, 6, resulted in the stockbrokers' being unable to enforce any claim by reason of the guaranty by Edwin A. Simpson of her account, the sum of $124,547.09 was due to

Laura E. Simpson and Edwin A. Simpson from the stock-brokers.

The stockbrokers filed objections and exceptions to the report of the master, among which were the following: "4. For that the master erred in finding: 'With respect to the transactions made on the Laura E. Simpson account, Edwin A. Simpson intended that there should be no actual purchase or sale. Laura E. Simpson likewise intended that there should be no actual purchase or sale. With respect to the transactions made on the Bertha L. Currie account, Edwin A. Simpson (so far as he had to do with these transactions) intended that there should be no actual purchase or sale. Bertha L. Currie likewise intended that there should be no actual purchase or sale. . . .' for the reason that said findings are not pertinent to the issues in this case, are inconsistent with other findings made by the master and are also inconsistent with certain facts reported by the master, and for the further reason that said findings are based upon facts which have no probative value."

"9. For that the master erred in finding or ruling that with respect to purchases and sales of shares of stock upon each and all of the four accounts the plaintiffs had reasonable cause to believe that there existed in the mind of Edwin A. Simpson and in the mind of Laura E. Simpson and in the mind of Bertha L. Currie the intention that there should be no actual purchase or sale for the reason that said finding or ruling is not pertinent to the issues in this case, is inconsistent with other findings made by the master and is also inconsistent with certain facts reported by the master; and for the further reason that said finding or ruling is based upon facts which have no probative value.

"10. For that the master erred in ruling that within the meaning of the statute an actual purchase or sale is one wherein the present plaintiffs received from the seller a certificate for the shares bought or delivered to the buyer a certificate for the shares sold.

"11. For that the master erred in ruling that unless at all times these plaintiffs had within their own possession or within their own control a sufficient number of the specific

shares to enable these plaintiffs to deliver to Edwin A. Simpson and to Laura E. Simpson and to Bertha L. Currie and to each of the plaintiffs' other customers, respectively, a certificate for the shares called for by the respective purchasers, then the plaintiffs failed to make an actual purchase within the meaning of the statute.

"12. For that the master erred in ruling that where a sale of shares was made upon any one of the accounts the plaintiffs must have had at the time within their own possession and control a sufficient number of shares to deliver to the buyer the shares required by the particular contract.

"13. For that the master erred in ruling that aside from instances where there is an immediate receipt or delivery of a valid certificate, a valid contract for the purchase or the sale of securities is a contract where the parties whether stock brokers or not have within their own possession or control a sufficient number of the required shares to satisfy the particular contract and continue to have such number in possession or control until the contract is performed."

The record contains no interlocutory decree upon the exceptions to the master's report and none confirming the report. A final decree was entered by order of *Brown*, J., dismissing the bill in equity with costs. The plaintiffs, stockbrokers, appealed.

The briefs before this court in the action of Edwin A. Simpson against the stockbrokers dealt solely with the question whether the finding by the auditor that the transactions of Edwin A. Simpson with the defendants were wagering contracts or bets and illegal and void at common law on the pleadings in that action and in the circumstances, prevented the plaintiff from recovering the avails thereof which were in the defendants' possession.

G. L. c. 137, §§ 4, 6, read as follows:

"Section 4. Whoever upon credit or upon margin contracts to buy or sell, or employs another to buy or sell for his account, any securities or commodities, intending at the time that there shall be no actual purchase or sale, may recover in contract from the other party to the contract, or from the person so employed, any payment made, or the value of

anything delivered, on account thereof, if such other party to the contract or person so employed had reasonable cause to believe that said intention existed; but no person shall have a right of action under this section if, for his account, such other party to the contract or the person so employed makes, in accordance with the terms of the contract or employment, personally or by agent, an actual purchase or sale of said securities or commodities, or a valid contract therefor. If a purchase or sale of the securities or commodities ordered to be bought or sold is made by the person so employed on a stock exchange or board of trade, and other purchases or sales of such securities or commodities are made on the same day on such exchange or board by such person for others in due course of business, and the balance of such purchases or sales of securities or commodities is received or delivered by such person by direction of the clearing house of such exchange or board on the day when such purchase or sale or contract therefor is made, or on the regular clearing day of such exchange or board next thereafter, which shall not be more than four days after the making of such purchase or sale, or contract therefor, such purchases and sales shall be deemed actual purchases and sales within the meaning of this section."

"Section 6. In a proceeding under either of the two preceding sections, if the person so employed does not make an actual transaction relieving him from liability under section four, the fact that the seller or the person employing another to sell for his account did not own the securities or commodities at the time of the contract of sale or of the giving of the order to sell, and the fact that settlements were made without completion of the purchase or sale of the securities and commodities bought or sold or ordered to be bought or sold, shall each be. *prima facie* evidence that within the meaning of section four there was an intention that there should be no actual purchase or sale, and that there was reasonable cause to believe that said intention existed; and the parties liable to an action under said section shall be jointly and severally liable."

*R. G. Dodge,* (*S. H. Pillsbury & S. E. Gifford* with him,) for William E. Bright and others.

*J. H. Vahey,* (*M. G. Rogers & W. H. Wilson* with him,) for Laura E. Simpson and others.

PIERCE, J.   The plaintiff in the action entitled Laura E. Simpson *v.* William E. Bright, Harold C. Sears and Albert B. Curtis, copartners, doing business at Boston and elsewhere under the firm name and style of Bright, Sears and Company, is the wife of the plaintiff in the action entitled Edwin A. Simpson *v.* William E. Bright, Harold C. Sears and Albert B. Curtis.   The defendants in both actions are the plaintiffs in the suit in equity against Edwin A. Simpson, Laura E. Simpson and Bertha L. Currie.   After the filing of answers in the actions and in the suit, the cases were referred to an attorney at law with direction that he, as auditor and master, hear the cases together, examine the vouchers and evidence, find the facts, and state the accounts.   At the conclusion of the hearings, the auditor found for the plaintiff in each action, and the parties then agreed "in the presence of the court" that the "Laura E. Simpson case is to be submitted on the auditor's report, all questions of law being open to either party, except that such evidence as is contained in the stenographic report, and as either party may deem material, is to be read to and furnished the court in excerpt form, on the question only as to the intention of the parties and their agents relating to actual purchases or sales, and, in relation to such intention, whether there was or was not reasonable cause of belief."   "In the presence of the court" it then was also agreed that the "Edwin A. Simpson case is to be submitted on the auditor's report, all questions of law being open to either party."   These actions then were heard by a judge of the Superior Court without a jury, in accordance with the foregoing agreements of the parties.

The master duly filed a report in the suit in equity, heard by him with the actions referred to him to hear as auditor. The plaintiffs made objections and filed exceptions based thereon to certain findings of fact and rulings of law contained in the report.   The record discloses a "Final Decree" dismissing the bill with costs, but aside from inference there

is nothing in the record of appeal to indicate that there ever was a hearing on the exceptions, that they were overruled, or that a decree was ordered or passed confirming the report.

The pertinent, undisputed facts, common to each action and to the suit in equity, found by the auditor and master, in substance are as follows: On October 18, 1917, Edwin A. Simpson made a deposit of $500 with the defendants, through their Lowell office, for the purpose of opening an account for the purchase and sale of stocks and other securities. During the period beginning about October 18, 1917, and ending about August 19, 1919, Simpson gave to the defendants various orders for the purchase and sale of stocks and other securities on his said account. About April 26, 1918, he opened a second account, known to the defendants as "Edwin A. Simpson Account No. 2," and dealt on said accounts during the period beginning April 26, 1918, and ending February 25, 1919. On April 30, 1921, statements of the defendants to the plaintiff Edwin A. Simpson at different times show a balance on accounts 1 and 2 in favor of Simpson amounting to $37,242.70.

On June 11, 1918, Edwin A. Simpson, influenced by a desire to benefit his wife or of gain to himself or by both motives, in the belief that profits would follow from stock operations in the future as profits had resulted in the months since October, 1917, opened an account in the name of his wife, Laura E. Simpson, by the purchase of two hundred shares of stock at a cost of $20,825. At the same time, at the request of the defendants' manager, Simpson procured the signature of his wife to a statement drafted by the manager in the following words: "June 10, 1918. Messrs. Bright, Sears & Co., Lowell, Mass. Gentlemen: — I hereby authorize you to accept any orders from E. A. Simpson for my account to buy or sell, deliver or receive any securities for my account. Also to pay any amount that may be due." At the same time the manager drafted another statement, which Simpson signed, reading as follows: "June 10, 1918. Messrs. Bright, Sears & Co., Lowell, Mass. Gentlemen: — I agree to protect the account of Laura E. Simpson and to keep the same properly margined, and in case of any decline

I agree to assume all financial responsibilities." An account called the "Laura E. Simpson Account" was entered on the books of the defendants, and operations were conducted therein beginning June 11, 1918.

On July 5, 1918, Simpson directed the transfer of $15,000 from his own account "No. 1" to the Laura E. Simpson Account, and the defendants did so. On April 11, 1919, he directed the defendants to transfer from his account "No. 1" to the Laura E. Simpson Account $10,000, and the defendants did so. At different times between April 1, 1919, and January 14, 1921, Simpson paid in cash to the defendants to be credited to the Laura E. Simpson Account $50,000. On April 22, 1920, he delivered to the defendants $10,000 of $4\frac{1}{4}$'s of 1928 Liberty bonds, and on April 26, 1920, other bonds of the same issue of the face value of $3,000, making $13,000 face value of bonds which the defendants then had on hand to the credit of this account. These bonds were left with the defendants at their request as collateral to the account, were retained thereafter by the defendants, and were in their possession on February 25, 1921, the date of the writ in the Laura E. Simpson case.

Laura E. Simpson had no means of her own when the Laura E. Simpson Account was opened; she herself never gave any orders to buy or sell on this account, was not present at any time in the defendants' office in Lowell, and never talked about the business either with the defendants' manager Woodward or with any of the defendants. After this account had been opened, Simpson directed that all transactions which he should have with the defendants should be upon the Laura E. Simpson Account unless otherwise specified. Laura E. Simpson herself never paid the defendants any money or handed to them any collateral, and they never received any money or any collateral on this account from any person other than Simpson. So far as orders to buy or to sell were given by Simpson on this account, such orders were given orally and were reduced to writing, either by the manager Woodward or by some subordinate in the Lowell office; so reduced they were transmitted by telegraph over the private wire to the Boston

office, or were telegraphed directly to the defendants' New York correspondents. From October 18, 1917, to April 30, 1921, Simpson withdrew no cash from his account except as he had directed the transfer of the $15,000 and the $10,000 to the Laura E. Simpson Account.

In February, 1921, the defendant Sears or Bright, manager Woodward and Simpson had a conference at the Lowell office of the defendants. At that time Simpson's credit balance shown on the books of the defendants was about $28,119.16 on account "No. 1," and $1,973.54 on account "No. 2." On April 30, 1921, the date when the last statement was rendered to Simpson by the defendants before the date of the writ in the case of Edwin A. Simpson, on May 6, 1921, the total credit balance in favor of Simpson was approximately $30,092.70. To this credit balance the master and auditor adds $6,285.45, which represents on the last named date interest on the credit balance, the then market value of certain bonds, and interest on that valuation which the reports find the defendants had on hand subject to the order of Simpson. At the conference in February, 1921, the defendants presented figures which purported to show the state of the Edwin A. Simpson Account "No. 1" and Account "No. 2" of the Laura E. Simpson Account, and of the Bertha L. Currie Account, and called upon Simpson to increase the margin on these accounts by payment of cash or by the deposit of further collateral. They asserted and made claims that Simpson was responsible for an existing debit balance on the Laura E. Simpson Account and for an existing debit balance on the Bertha L. Currie Account, which Simpson had guaranteed, and demanded that these accounts should be consolidated with his own two accounts and all four be treated as one. So consolidated the defendants claimed the amount owed by them to Simpson was about $2,000.

Simpson did not assent to the claims and demands of the defendants, and on February 25, 1921, presumably in consequence of these demands, caused his wife to begin an action of contract under G. L. c. 137, § 4, as amended St. 1926, c. 353, against the defendants to recover payments to the

amount of $94,730.80, alleged to have been made on wagering transactions.

By writ dated May 6, 1921, Edwin A. Simpson brought an action at common law against the defendants to recover the sum of $37,242.70, as being the balance due him on the accounts in his name.

On October 21, 1921, the defendants filed their bill in equity charging that the accounts standing in the name of Edwin A. Simpson and in the name of Laura E. Simpson "constitute one single, indivisible and entire account belonging to said Edwin A. Simpson, and that it is inequitable and unjust that said Edwin A. Simpson be permitted to maintain two separate actions at law on the same account." The bill further charged that Simpson had guaranteed in writing the account of one Bertha L. Currie; that he is liable to the defendants on his said guarantees of the accounts of Laura E. Simpson and of Bertha L. Currie and that the defendants are entitled to reimburse themselves out of the balance in favor of Simpson to the extent that the accounts of Laura E. Simpson and of Bertha L. Currie show balances due the defendants. The bill prayed that Edwin A. Simpson and Laura E. Simpson be enjoined from proceeding further in the actions at law brought by them respectively, and that the rights of all parties be determined in this suit. As stated above, the bill, without an interlocutory decree overruling the exceptions and confirming the master's report, was dismissed with costs by a final decree.

The master and auditor in each action and in the suit in equity, stating that the findings were "included in my respective reports in each of the three cases," found the course of business in the transactions between Bright, Sears and Company and their customers Edwin A. Simpson, Laura E. Simpson and Bertha L. Currie was the same in each case and was substantially as follows: "Edwin A. Simpson, whether on his own account as principal or on account of Laura E. Simpson as her agent or on account of Bertha L. Currie as her agent, gave or authorized in Lowell an order to buy or to sell a certain number of shares of a certain stock. This order was given to and accepted by Bright, Sears and

Company at their Lowell office, and forwarded from there to their Boston office, or, at times, directly to their New York office. Sometimes the order was executed on the Boston stock exchange and sometimes on the New York stock exchange. Whether Bright, Sears and Company placed the order in Boston or in New York depended somewhat upon the number of shares covered by the order. In most instances in the cases before me the order directed the purchase or sale of one hundred shares or some multiple thereof. The brokers consequently placed upon the New York exchange most of the orders given or authorized by Simpson. A 'round lot' on the New York exchange consists of one hundred shares or some multiple thereof. A 'round lot' on the Boston exchange consists of fifty shares or some multiple thereof. When the number of shares does not conform to these requirements on the respective exchanges the lot is called an 'odd lot' on that exchange. Orders for a 'round lot' are placed in the stock exchange and, after execution of them, receipts and deliveries are made in accordance with the practice of the exchange through the stock exchange clearing house. Under the practice of each exchange deliveries are to be made on the next regular clearing day . . . usually the day following the transaction." "When the transaction is on Friday or Saturday the next regular clearing day is on the following Monday, unless it is a holiday. (The regular day may not be 'more than four days after the making of such purchase or sale.' G. L. c. 137, § 4.)" "The purpose of the clearing house is to simplify the work of its members. All 'round lot' transactions are reported to the clearing house by the brokers who make them. The clearing house officials compare the reported transactions and notify the members of the number and kind of shares which the member is to deliver or to receive and the name of the other member to whom the delivery is to be made or from whom a delivery is to be received. By this method each member is relieved of the burden of going to each other member with whom he has had a transaction in shares and tendering to him or receiving from him a certificate for the shares covered by the transac-

tion. Instead of this laborious process the member, having received his instructions from the clearing house, delivers only the balance of any particular shares sold by him and delivers said balance to another member designated by the exchange officials. . . . When the sale and purchase is of an 'odd lot' the brokers in the transaction must attend to the deliveries themselves. The transaction does not go through the clearing house."

The master and auditor, in each action and in the suit in equity, in the application of the practice of the stock exchange in Boston and New York, found "that Bright, Sears and Company placed upon the Boston Stock Exchange some of the orders received from Simpson which [they] . . . executed in accordance with the practice of said exchange and placed upon the New York Exchange the majority of the orders received from him . . . . The . . . [defendants'] brokers transmitted to their New York correspondents the orders which were to be executed in that city"; and further that Bright, Sears and Company's correspondents in New York executed these orders (with a single exception) [which was delayed through accident] in accordance with the practice of the stock exchange and notified Bright, Sears and Company that the transmitted order had been executed . . . . The transactions, whether placed in Boston or in New York, were made in accordance with the terms of Bright, Sears and Company's employment so far as concerned the quantities and kinds of shares and the prices at which they were to be bought or sold. The New York correspondents caused the order to be executed on the New York stock exchange by buying or selling according to the order, making this transaction with some other member of that exchange who was acting for his own principal."

Upon the findings by the auditor, the judge in the Superior Court found and ruled in the action at law by Laura E. Simpson, as follows: "The facts found by the auditor which were uncontroverted establish that the defendants actually executed the orders of the plaintiff by making actual purchases or sales of the securities ordered bought

or sold, in accordance with the practice of the stock exchange."

The master in the suit in equity found that "Throughout the entire period covered by these four accounts no certificate for shares bought was received by Edwin A. Simpson or by Laura E. Simpson or by Bertha L. Currie, nor was any certificate tendered to any one of these persons by the" plaintiffs in the suit in equity; and he also found that "Neither Edwin A. Simpson nor Laura E. Simpson nor Bertha L. Currie ever requested that a certificate be delivered to any one of them, nor did any one of them expect to receive a certificate at any time." Upon the facts he reported he further found in substance that Simpson as agent for Laura E. Simpson and Bertha L. Currie intended there should be no actual purchase or sale, and because Laura E. Simpson and Bertha L. Currie "did not own the securities . . . at the time of the contract of sale or of giving of the order to sell," (G. L. c. 137, § 6,) ruled that this fact was *prima facie* evidence that within the meaning of the statute there was an intention that there should be no actual purchase or sale and that there was reasonable cause to believe that the defendants knew said intention existed.

Based upon his findings in the action by Laura E. Simpson the auditor ruled in that action: (1) "that 'actual purchase or sale' as the words are used in the statute means a present transaction and not a contract to buy or sell for future delivery"; and (2) "that the defendants must have had at all times within their own possession and control sufficient certificates of the particular stock bought on the plaintiff's order to deliver to her upon payment the number of shares ordered by her, and also enough shares to deliver to every other customer in that same stock a certificate for the shares bought by that customer." The judge in substance adopted the rule (2) above stated. The ruling is vital, and the accuracy of it is determinative of that action at law, in view of the auditor's finding that the evidence did not "justify" him in concluding that the requirements of the rule above stated were satisfied.

The ruling evidently is based upon *Fiske* v. *Doucette,*

206 Mass. 275, and like cases which were decided before St. 1919, c. 247, was enacted.   R. L. c. 99, §§ 4, 7, contained no legislative provision as to what should be deemed an actual purchase or sale within the statute.   It is plain and indisputable that an act of legislation duly adopted is binding upon the courts, whatever the old law might be.   And with this rule in mind we are brought to the consideration of G. L. c. 137, §§ 4, 6.

R. L. c. 99, § 4, now, as amended by St. 1919, c. 247, § 1, G. L. c. 137, § 4, contains at the end thereof the paragraph which follows: "If a purchase or sale of the securities or commodities ordered to be bought or sold is made by the person so employed on a stock exchange or board of trade, and other purchases or sales of such securities or commodities are made on the same day on such exchange or board by such person for others in due course of business, and the balance of such purchases or sales of securities or commodities is received or delivered by such person by direction of the clearing house of such exchange or board on the day when such purchase or sale or contract therefor is made, or on the regular clearing day of such exchange or board next thereafter, which clearing day shall in no event be more than four days after such purchase or sale, or contract therefor, is made, such purchases and sales shall be deemed actual purchases and sales within the meaning of this section."

In the above paragraph the words "purchase or sale . . . made by the person so employed" are taken to mean a purchase or sale effected through the broker, individually or through an agent of that broker, and to apply to all kinds of purchases and sales.   That a broad interpretation should be given to the quoted words in furtherance of the manifest purpose of the amendment is made clear by the provisions of St. 1926, c. 353.   *Wilson* v. *Head,* 184 Mass. 515.   *Weisberg* v. *Hunt,* 239 Mass. 190, 199.

The ruling of the judge, subject to the exception of the defendants, that "there is no evidence . . . upon which a finding of fact could be made, that the balance of purchases or sales of these securities or the commodities ordered by the plaintiff to be bought or sold were received or

delivered by the defendants by direction of any clearing house, or exchange or board of trade within the time specified in the last sentence of G. L. c. 137, § 4," is manifest error. The master and auditor's findings upon this point are explicit to the effect that the purchases and sales and deliveries were made in accordance with the practice of the stock exchange, and that the deliveries were made on the day following the transactions unless that day was Friday or Saturday, and, if so, they were made on the next regular clearing day, which would be the following Monday unless that day was a holiday. To sustain this ruling of the master, auditor and judge would be to ignore the words and to emasculate the manifest intent of the statute. The contracts of purchase and sale made by Simpson as agent on behalf of Laura E. Simpson and Bertha L. Currie were not infractions of G. L. c. 137, § 4; (see now St. 1926, c. 353).

It follows that in the case of Laura E. Simpson *v*. William E. Bright, et ali., the defendants' request for a ruling, that "on all the evidence in the case the plaintiff cannot recover," should have been given, and the exception saved to the refusal so to rule must be sustained and judgment entered for the defendants. As this case cannot be tried again on the theory of a violation of G. L. c. 137, § 4, it is unnecessary to consider the remaining exceptions by the defendants therein.

In the action of Edwin A. Simpson *v*. William E. Bright, et ali., the request of the defendants for a ruling that "on the facts found by the auditor the plaintiff is not entitled to recover" was refused rightly, and the exception saved to such refusal must be overruled.

We assume without decision that the entry of the final decree in the suit in equity entitled William E. Bright, et ali. *v*. Edwin A. Simpson, Laura E. Simpson and Bertha L. Currie was an implied overruling of the exceptions of the plaintiffs and a confirmation of the master's report. *American Circular Loom Co.* v. *Wilson*, 198 Mass. 182, 200. *Fuller* v. *Fuller*, 228 Mass. 441. *Cali* v. *Caliri*, 254 Mass. 488. G. L. c. 231, § 124. The rulings excepted to in the exceptions numbered 4, 9, 10, 11, 12 and 13 were erroneous for the

reasons stated. We find no error in the implied decree overruling the exceptions numbered 1, 2, 3 and 7. The cardinal prayer of the bill, "That the rights of all parties, both plaintiffs and defendants, be considered and determined . . . in this suit and that this court enter a decree herein showing the amounts, if any, due from plaintiffs to defendants or any of them, and the amounts due from defendants or any of them to plaintiffs," will be attained by the order that the exceptions in the action of Edwin A. Simpson be overruled; by the order that the exceptions in the action of Laura E. Simpson be sustained and judgment in that action be entered for the defendants; and by the entry of a decree that the bill in equity be recommitted to a master to determine what sum is due the defendant Edwin A. Simpson after deducting from $36,378.15 — the sum found by the master to be due him on June 30, 1921 — the sums due the plaintiffs on that day on the guaranties of Edwin A. Simpson in behalf of Laura E. Simpson and Bertha L. Currie, having regard to the then value of the securities held by the plaintiffs on the Laura E. Simpson account, which value, not specifically ascertained, is found by the master to reduce the debt due Edwin A. Simpson to a sum between $5,000 and $6,000. The decree is reversed and the case is to stand for further hearing in the Superior Court in conformity with this opinion.

*Ordered accordingly.*