P. J. MEEHAN *vs.* NORTH ADAMS SAVINGS BANK.

Berkshire.     September 21, 1937. — February 16, 1939.

Present: FIELD, C.J., DONAHUE, LUMMUS, & QUA, JJ.

*Equity Pleading and Practice,* Master: report of evidence, drawing of inferences, report, objections to report, exceptions to report; Order for decree; Decree. *Letter. Evidence,* Letter. *Notice. Pledge.*

An interlocutory decree in a suit in equity in the Superior Court was technically irregular in the following particulars: (a) conclusions of fact contrary to those found by a master were drawn from summaries of evidence made by him under Rule 90 of the Superior Court (1932), instead of an exception to the report on the question involved being sustained; (b) an order for a final decree was included in the interlocutory decree; (c) the decree purported to pass upon "objections," instead of upon exceptions which resulted therefrom; (d) a blanket statement was made sustaining "objections [exceptions] not inconsistent with the foregoing findings and rulings"; (e) no part of the master's report was confirmed although some exceptions were not sustained.

Questions as to the admission or exclusion of evidence by a master do not come before this court without the filing under Rule 90 of the Superior Court (1932) of specific objections relating thereto: a report of such questions by the master with, appended thereto, an omnibus objection to his rulings on evidence "as referred to" by him is not sufficient.

Evidence that a copy of a letter was found in the files of the writer, that the practice and regulations in the writer's business were that after a letter had been signed the original was sent to his mailing department to be mailed and the copy was filed, and that the copy would not appear in the files unless the original had been duly mailed, warranted a finding that the original had been duly mailed and received by the addressee although he denied having received it.

The mere fact, that a bank, with whom a loan was being negotiated, received from a brokerage firm by whom the borrower was employed a letter stating that it was sending certain shares of stock with a draft for the amount of the loan attached "for the account of" a named person "under advice to him," did not warrant a finding by a master that the bank was thereby put upon notice that the stock sent, which was in the form of "street" certificates, was the "absolute" property of the person named in the letter and not of the borrower, and that the borrower was acting as agent for that person; nor render the bank liable to that person for later releasing the certificates to the borrower.

Where, upon appeals in a suit in equity from an interlocutory decree sustaining several exceptions to a master's report and from a final decree dismissing the bill, the final decree was affirmed by this court by dealing with one exception only, the other exceptions became immaterial and were not considered, and the interlocutory decree was ordered modified by overruling them.

BILL IN EQUITY, filed in the Superior Court on May 21, 1935.

The suit was heard on a master's report by *Burns*, J., by whose order there were entered an interlocutory decree as to the report and a final decree dismissing the bill. The plaintiff appealed from both decrees.

*J. N. Alberti* (*P. J. Ashe* & *J. L. Burns* with him,) for the plaintiff.

*W. A. O'Hearn*, for the defendant.

LUMMUS, J. The facts appear in the report of a master. The plaintiff was a clergyman in Greenfield. He was friendly with one Coyne, a young man in his parish, and trusted him. Coyne was a "customers' man" for Goodbody & Co., a stock brokerage house in New York with a branch office at North Adams in charge of one Dudley. The plaintiff closed out his account with another brokerage house, and through Coyne opened a margin account with Goodbody & Co. on September 27, 1927. He did all his business with Goodbody & Co. through Coyne. At the close of business on October 28, 1929, Goodbody & Co. held for the plaintiff securities of the market value of $69,225, against which the plaintiff owed them $46,411.19, leaving an equity in the account worth $22,813.81. The account was short $536.19 of the margin required by Goodbody & Co., but apparently that caused no anxiety.

On the next day, October 29, 1929, a crash in the stock market took place. Coyne told the plaintiff that the securities in his account would be sold out unless $10,000 should be deposited as additional margin with Goodbody & Co. But Coyne told the plaintiff that because of Coyne's relations with an officer of the defendant bank Coyne could borrow the needed $10,000, and even more, from that bank for the plaintiff, upon collateral security consisting of two thousand shares of stock in the Kelvinator Corporation held in the margin account. The Kelvinator Corporation is incorporated in Michigan, which has adopted the uniform stock transfer act, and consequently the transfer in Massachusetts of stock of that corporation is governed by our uniform stock transfer act. *Edgerly* v. *First National Bank*

*of Boston,* 292 Mass. 181, 184–185. It was arranged that Coyne would borrow from the defendant bank $15,000 for the plaintiff upon the security of the two thousand shares of Kelvinator stock, and pay the $15,000 to Goodbody & Co. in reduction of the amount due them upon the margin account.

Accordingly, at the suggestion of Coyne, the plaintiff instructed Coyne to forward the certificates for the two thousand shares of Kelvinator stock from Goodbody & Co. to the defendant bank. An order was entered on the books of Goodbody & Co. to this effect, in these words, "Ship 2000 KLV Act. P. J. Meehan to the North Adams Savings Bank, draft attached, J. C. D." The initials were apparently those of Dudley. The Kelvinator stock was not registered in the plaintiff's name, but was represented by "street certificates," issued in the name of some former owner and indorsed by him in blank, with no name filled in as that of the transferee, with the result that the certificates were transferable by mere delivery. G. L. (Ter. Ed.) c. 155, § 27 (a). Upon receipt from its North Adams branch of the order to ship the stock to the defendant, the New York office of Goodbody & Co., on October 31, 1929, sent the certificates through its New York bank to the North Adams National Bank with a draft of Goodbody & Co. upon the defendant for $15,003.80 attached. On the same day, October 31, 1929, Goodbody & Co. wrote the defendant a letter which the defendant received (so the master found), saying that they were sending two thousand shares of Kelvinator stock with draft for $15,003.80 attached, "for the account of P. J. Meehan, Esq., 133 Main Street, Greenfield, Mass., under advice to him." This was the first mention of the plaintiff's name to the defendant. On the same day Goodbody & Co. wrote to the plaintiff, saying "This is to advise you that we are forwarding to the North Adams Savings Bank, North Adams, Mass., with draft attached, two-thousand shares Kelvinator Corporation, in the amount of $15,003.80 for your account." On November 2, 1929, the defendant paid the draft (thus making the loan to Coyne) at the North Adams National Bank,

received the certificates from that bank, and held them as collateral for its loan to Coyne. Up to this point, therefore, the plaintiff received all the benefit from the $15,003.80 borrowed by Coyne from the defendant, for the plaintiff's debt to Goodbody & Co. was reduced by that amount.

Notice of the coming due of instalments of interest was given by the defendant to Coyne. From time to time the plaintiff paid interest on the loan by giving to Coyne his own check payable to the defendant, whereupon Coyne gave it to the defendant. In this way the interest was paid to October 30, 1933. The plaintiff in the same way paid about $9,500 on the principal. But on December 13, 1934, the plaintiff made a written demand upon the defendant for the return of the two thousand shares of Kelvinator stock, stating that he was prepared to pay the debt against which it was held. This was the first written communication between the parties. The plaintiff has never received the stock or learned the amount of the debt. The balance of debt due on August 3, 1934, was $5,437.50.

What happened to the Kelvinator stock held by the defendant as security? As early as November 12, 1929, the defendant gave back to Coyne three hundred shares as unnecessary to its security. The other seventeen hundred shares were from time to time surrendered by the defendant to Coyne. Many of them were sold by Coyne through Goodbody & Co., but the defendant received none of the proceeds. The plaintiff knew nothing about the withdrawal of the shares or the disposition of them, and authorized neither.

"On the basis of the foregoing facts, the evidence and the inferences reasonably flowing therefrom," and "from the conflicting state of the oral evidence given by Mr. McCraw, Mr. Whitaker [officers of the defendant] and Leo Coyne, and from examination of the written evidence submitted as exhibits in this case, and from observations made at the actual taking of testimony, the master [says that he] is unable to escape the inferences and therefore finds as facts that at the time that Leo Coyne arranged with the defendant for a loan of $15,003.80 the defendant, through its officers,

knew that Leo Coyne was acting for and in behalf of the plaintiff and that the plaintiff was the absolute owner of . . . 2000 shares of Kelvinator subject only to the lien of Goodbody & Co. on it, and that the aforesaid loan of $15,003.80 was carried in the name of Leo Coyne for his convenience with the knowledge and approval of one of the officers of the defendant that it was for the benefit of the plaintiff."

The judge made "findings and rulings" as follows: "On the facts found by the master, on his summary of the evidence requested by the defendant, and on the inferences drawn by the court from both, the court rules that the conclusion reached by the master is not warranted and that the evidence is not sufficient in law to support such conclusions. The defendant bank cannot be bound by any side agreements between the plaintiff and Coyne. The court draws the inference that the stock was loaned to Coyne by plaintiff for the benefit of both himself and Coyne and the fact that the stock came from plaintiff's margin account with Goodbody & Co. with the designation 'a/c P. J. Meehan' or some other designation containing plaintiff's name on the transmission notice does not conclude or bind defendant bank, nor does the fact that interest payments or payments on principal were made by Coyne with plaintiff's checks. The defendant's motion that the master's report and his summary of the evidence attached thereto be dismissed and that the master be ordered to report all the evidence, is denied. The plaintiff's motion that the master's report be confirmed is denied. Defendant's objections not inconsistent with the foregoing findings and rulings are sustained." This was followed by an interlocutory decree "that the defendant's motion that the master's report and his summary of evidence attached thereto be dismissed, and that the master be ordered to report all the evidence, is denied; that the plaintiff's motion that the master's report be confirmed, is denied; that the defendant's objections not inconsistent with the foregoing findings and rulings, are sustained; that a decree be prepared and entered dismissing the plaintiff's bill of complaint with costs." A final decree dis-

missing the bill with costs followed. The plaintiff appealed from both decrees.

Technically the course taken was irregular. (a) The judge, under Rule 90 of the Superior Court (1932) had no right to draw conclusions of fact from the summaries of the evidence reported by the master under that rule. The judge could use those summaries only for the purpose of determining whether a particular finding was warranted by the evidence as matter of law. *Morin* v. *Clark*, 296 Mass. 479, 482–483. It seems that the judge did no more than that; but the accurate mode of expressing a decision that a finding is not so warranted is by sustaining an exception taking the point. (b) An order for a final decree has no proper place in an interlocutory decree dealing with a master's report. (c) "Objections" are properly neither sustained nor overruled; the exceptions which impliedly result therefrom should be sustained or overruled. Rule 90 of the Superior Court (1932). *Pearson* v. *Mulloney*, 289 Mass. 508, 514. (d) The sustaining of "the defendant's objections [exceptions] not inconsistent with the foregoing findings and rulings" burdens us with the task of studying all the defendant's exceptions, and discovering which ones are "not inconsistent" with the judge's "findings and rulings." Exceptions ought to be sustained or overruled specifically. (e) Furthermore, since a final decree was ordered upon facts established only by a master's report, the judge evidently intended to confirm the report as modified by the sustaining of the exceptions, and impliedly did so; but by the better practice that should have been done by interlocutory decree. *Simpson* v. *Bright*, 257 Mass. 309, 330. *Druker* v. *Druker*, 268 Mass. 334, 342. A master's report can have no effect until confirmed. *North Carolina Railroad* v. *Swasey*, 23 Wall. 405. *C. A. Briggs Co.* v. *National Wafer Co.* 215 Mass. 100, 108.

We must therefore discover how the defendant's exceptions have affected the master's findings.

One point of importance with respect to which the judge sustained an exception was one to which no objection was clearly taken. It may have been thought that the master,

by reporting the questions of evidence saved during the hearing, duly saved them for the parties. The only reference to them in the objections brought in was of an omnibus character.* Even though the questions and the evidence upon which they are based are fully reported by the master, no question of evidence is presented for the consideration of the judge or of this court without an objection, specifically addressed to the particular question of evidence, brought in under Rule 90 of the Superior Court (1932). *Arnold* v. *Maxwell,* 230 Mass. 441, 444. *Commissioner of Banks* v. *Tremont Trust Co.* 267 Mass. 331, 336, 337. *Pearson* v. *Mulloney,* 289 Mass. 508, 512, 513.

Nevertheless the judge appears to have sustained a supposed exception to the admission of a copy of a letter from Goodbody & Co., addressed to the defendant, dated October 31, 1929, which mentioned the plaintiff's name, as already stated in this opinion. The importance of this copy is that it formed the basis for the finding that the original letter was received by the defendant. An accountant for Goodbody & Co. testified that the copy was found in the files of that company; that the practice and regulations of that company were that after a letter had been signed the original was sent to the mailing department to be mailed and the copy was filed; and that the copy would not appear in the files unless the original had been duly mailed. The defendant denied the receipt of the original. An exception to the admission of this copy should not have been sustained. The master could infer that the original had been duly mailed. *Prudential Trust Co.* v. *Hayes,* 247

---

* There was a finding numbered 27 in the master's report as follows: "27. Certain exceptions were taken by each of the parties to the master's rulings in regard to the admission or exclusion of evidence. A list of such exceptions is appended to this report and made a part hereof." Under a heading, "Exceptions of the Defendant," the master stated the circumstances of the admission in evidence of the letter of October 31, 1929, from Goodbody & Co. to the defendant and that an exception of the defendant to its admission was "saved". An objection of the defendant appended to the master's report and numbered 21 was as follows: "21. The defendant objects to the master's rulings in regard to the admission or exclusion of evidence wherein it took certain exceptions as referred to in finding numbered 27 of the master's report and attaches hereto a request for the master to report the defendant's exceptions saved during the taking of the evidence before the master, to the court, as required by the order of reference, and under the provisions of Rule 90 of Superior Court Rules (1932)." — REPORTER.

364MEEHAN *v.* NORTH ADAMS SAVINGS BANK.     [302

Mass. 311. *Whitney Wagon Works* v. *Moore,* 61 Vt. 230.
*Hastings* v. *Brooklyn Life Ins. Co.* 138 N. Y. 473. *Farmers'
State Bank & Trust Co. of Gorman* v. *Central State Bank of
Dallas,* 281 S. W. 632 (Texas Civ. App.). *Myers* v. *Moore-
Kile Co.* 279 Fed. 233, 25 Am. L. R. 1, and note. *Prescott,
Wright, Snider Co.* v. *Cherryvale,* 134 Kans. 53. See also
*Santarpio* v. *New York Life Ins. Co.* 301 Mass. 207, 209.
Compare *William Gardam & Son* v. *Batterson,* 198 N. Y.
175, 19 Ann. Cas. 649; *Cook* v. *Phillips,* 109 N. J. L. 371,
86 Am. L. R. 539. He could also infer that it had been
received by the defendant. *Avisais's Case,* 285 Mass. 56, 58.
The action of the judge in this respect was erroneous.

The defendant brought in an objection, numbered 14,
to the finding of the master, quoted earlier in this opinion,
that the defendant knew that Coyne "was acting for and
in behalf of the plaintiff and that the plaintiff was the abso-
lute owner of . . . 2000 shares of Kelvinator . . .," on
the ground that the finding was neither supported by the
subsidiary facts found nor warranted by the evidence.
Upon the last point, that the evidence was not "sufficient
in law to support" the finding, the conditions of Rule 90
of the Superior Court (1932) having been met, the master
came under the duty to "append to his report, for the sole
purpose of enabling the court to determine such question
of law, a brief, accurate and fair summary of so much of
the evidence as shall be necessary for such purpose." The
master purported to discharge this duty in these words:
"Reference is made to the entire summary given herein
plus the subsidiary fact and the express inference drawn
by the master as set forth in paragraph 16 . . . of the
report." These references are (a) to summaries of evidence
relating to many different exceptions, comprising twelve
pages of the printed record, and (b) to the very paragraph
of the report already quoted, which contains the finding to
which the objection was addressed. Apparently the excep-
tion which resulted from this objection was one of those
which the judge sustained. It goes to the vitals of the case.

We think it was properly sustained. Our study of the
record convinces us that the only substantial evidence upon

which the finding could have been based was the letter from Goodbody & Co. to the defendant dated October 31, 1929, which mentioned the plaintiff's name. We do not discuss a communication from Goodbody & Co. to the defendant on December 9, 1929, which also contained the plaintiff's name, for that was less informative than the letter of October 31, 1929. The letter, which we must treat as having been sent and received, informed the defendant that Goodbody & Co. was forwarding to a New York bank "with draft attached, two-thousand shares Kelvinator Corporation, in the amount of $15,003.80 for the account of P. J. Meehan, Esq., 133 Main Street, Greenfield, Mass., under advice to him," and requested the defendant to "honor our draft upon presentation." That letter did not warrant a finding that the defendant knew that Coyne was acting merely as agent for the plaintiff, that the plaintiff was the real borrower, and that the plaintiff owned the stock. Street certificates are often "lent" by the holder and owner to another to enable that other to pass title to them for his own benefit, the only obligation being to replace them with similar certificates and sometimes to pay for the use of them. The defendant might know from the letter that the plaintiff had ordered the delivery of the certificates to the defendant, but that did not fasten upon the defendant any such knowledge of the entire transaction as the master found. See *Equitable Trust Co.* v. *Rochling,* 275 U. S. 248. For all the defendant knew, Coyne owned the certificates, or had full power of disposition of them. The defendant took a good title as pledgee, for value and in good faith. G. L. (Ter. Ed.) c. 155, §§ 27 (a), 31, 34, 43, 44. *Edgerly* v. *First National Bank of Boston,* 292 Mass. 181. *Ironside* v. *Levi,* 278 Mass. 18. *Ripley* v. *J. Murray Walker & Co. Inc.* 286 Mass. 264. *DeBoer* v. *Anthony,* 300 Mass. 403. When it saw fit to release the certificates, it was entitled to deliver them back to Coyne, or even to accept them as collateral upon other indebtedness of his.

Since the consideration of the fourteenth exception enables us to decide the case, we find it unnecessary to attempt

to discover which of the other exceptions were in truth sustained by the cryptic interlocutory decree, and we overrule the other exceptions as unimportant in view of the decision. *Central Trust Co. of New York* v. *Wabash, St. Louis & Pacific Railway,* 57 Fed. 441, 450. *Montague* v. *Boston & Albany Railroad,* 124 Mass. 242, 249. *Cushman* v. *Noe,* 242 Mass. 496, 502.

The interlocutory decree is to be modified by sustaining the defendant's fourteenth exception to the master's report and by overruling all others; by confirming the master's report as so modified; and by omitting the order for a final decree; and as so modified the interlocutory decree is affirmed. The final decree is affirmed with costs.

*Ordered accordingly.*